UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **KELLY BARIL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) **Case No.** |
| v. | ) |
| | ) |
| **NORDX,** | ) |
| | ) |
| Defendant | ) |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kelly Baril, by and through undersigned counsel, hereby complains against Defendant NorDx as follows:

## INTRODUCTION

1. This is an action for violation of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a) and 215(a)(3); Maine's Minimum Wage Law ("MWL"), 26 M.R.S. §§ 664 and 670; Maine's Timely and Full Payment of Wages Law ("TFPWL"), 26 M.R.S. §§ 621-A and 626; and the common law.

## THE PARTIES

2. Plaintiff Kelly Baril ("Ms. Baril"), formerly known as Kelly Fontaine, is an individual residing in the Town of Turner, County of Androscoggin, and State of Maine.

3. Defendant NorDx is a Maine non-profit corporation duly authorized to do business in the State of Maine, operating human specimen laboratories in various locations, with its principal place of business and main campus located in Scarborough, Maine, where Plaintiff worked.

1

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

5. Venue is proper within this Court because the wage and hour violations and retaliation alleged herein occurred at Plaintiff's place of employment, where NorDx is headquartered, in the Town of Scarborough, County of Cumberland, and State of Maine.

## BACKGROUND FACTS

6. Ms. Baril began working as a phlebotomist for NorDx in 2006.

7. At all times during her employment, Ms. Baril performed her job duties satisfactorily, obtaining a far higher and more accurate number of blood draws for NorDx than most of her coworkers.

8. In 2012, NorDx promoted Ms. Baril to the position of "group lead," which involved more supervisory job duties.

9. NorDx compensated Ms. Baril on an hourly (FLSA non-exempt) basis while she was a group lead.

10. As a group lead, Ms. Baril's regular schedule was 40 hours per week, Monday through Friday, from 5:00 am to 1:30 pm, with a half hour for lunch.

11. Ms. Baril lives an hour away from the NorDx Scarborough campus.

12. NorDx's policies prohibited Ms. Baril from using or checking her cell phone during the one-hour drive to work that would need to start at 4:00 am in order for her to arrive at work on time at 5:00 am.

13. When Ms. Baril became a group lead, she became responsible for checking two separate phone lines that NorDx maintained. Each morning before she left for work at 4:00 am to arrive in Scarborough for her 5:00 am shift, Ms. Baril was expected to check: (1) the "call out line," which phlebotomists were supposed to call at least two hours before the beginning of their shift if they were going to be absent; and (2) the "next day" mailbox, where messages would be left if NorDx needed to reassign phlebotomists to various locations for the day according to work flow.

14. NorDx required, suffered, or permitted Ms. Baril to begin checking the two phone lines noted above from her home at approximately 3:30 am every work day. Often, messages would be in one or both mailboxes, requiring Ms. Baril to begin calling other phlebotomists to cover the shifts or move around to different locations for urgent "next day" draws.

15. On the days that she had messages in the two mailboxes noted above, Ms. Baril would be on the phone between 3:30 am and 4:00 am trying to find employees to cover shifts. Even if she did not have to get on the phone during this time, Ms. Baril had to check the two mailboxes again at 4:00 am to see if there were any new messages before she left for work.

16. Although phlebotomists were supposed to call out at least 2 hours prior to the start of their scheduled shift, it was not uncommon for Ms. Baril to get messages on the call out line right up until 4:00 am for the shift starting at 5:00 am. On these occasions, Ms. Baril had to get on the phone and find coverage for the employees who had called out sick. Because Ms. Baril was not permitted to do this work in her car on the one-hour drive to work, she would be late to work whenever she was on the phone past 4:00 am.

17. NorDx also required, suffered, or permitted Ms. Baril to work after her shift every day from 1:30 pm to 4:30 pm. Although NorDx claimed this was "on call" time, Ms. Baril

regularly took phone calls and performed work for NorDx after her shift ended, without adequate compensation.

18. NorDx also required, suffered or permitted Ms. Baril to work on Saturday mornings taking calls for NorDx, without adequate compensation.

19. Ms. Baril spent at least 10 minutes and sometimes more than an hour per day on the phone calls outlined above, during which time she was not "on call" within the meaning of the FLSA, but instead performing work for NorDx.

20. NorDx did not compensate Ms. Baril for the time she spent making the calls listed above. Instead, NorDx paid Ms. Baril $2.25 per hour for "on call pay," even though Ms. Baril was not on call but performing work for NorDx.

21. Ms. Baril repeatedly complained that NorDx did not pay her for the additional hours that she spent each week on the phone scheduling and reassigning staff and checking the two mailboxes. She made specific complaints to Human Resources and her manager, Linda Gale.

22. NorDx responded to Ms. Baril's complaints by telling her she needed to fill out a "phone log," but when Ms. Baril repeatedly asked for a phone log, NorDx ignored her.

23. In June of 2016, NorDx gave Ms. Baril a written warning for arriving later than the 5:00 am start time of her shift.

24. In response to this discipline, Ms. Baril explained in writing that her tardiness was the result of having to reassign staff or find coverage for employees who called out sick, which NorDx's own policy prohibited her from doing in the car during her one-hour drive to work. Ms. Baril notified NorDx that any time she needed to be on the phone covering shifts or rearranging staff schedules past 4:00 am, she could not leave her home until the calls were completed and coverage was found. On those days, she had no choice but to leave for work later than 4:00 am.

25. NorDx ignored the above explanation and refused to consider that Ms. Baril's tardiness was the result of performing work for NorDx at her home, which was a requirement of her job.

26. Despite Ms. Baril explaining the above to NorDx, the company still did not provide Ms. Baril with a phone log or any other method of tracking the time she spent on the phone outside of her regular day shift.

27. In or around 2017, NorDx had employees use an app on their phone to clock in and out of work. Ms. Baril began using this app to "clock in" to work when she would begin checking the two mailboxes described above, and when she was making calls to other staff to cover and reassign shifts.

28. After Ms. Baril complained to NorDx about not being paid for the time she spent performing work prior to arrival for her 5:00 am shift, NorDx wrote her up on March 10, 2017 for being late.

29. Around this time, Ms. Baril met with her supervisor (Jessica Fitch) and/or Human Resources to formally complain about the fact that she was not being adequately compensated for hours spent working for NorDx prior to 5:00 am, after 1:30 pm, or on Saturdays. During this meeting, NorDx criticized Ms. Baril in a retaliatory manner for clocking in before and after she performed the job duties described above from her home.

30. After years of Ms. Baril complaining about NorDx's failure to pay her either straight time or overtime for hours worked outside of her normal schedule, including a formal complaint putting NorDx on notice of her wage and hour claim, Defendant terminated Plaintiff from employment effective May 31, 2017.

31. NorDx claimed that Ms. Baril was being terminated on May 31, 2017 for tardiness, pursuant to their progressive discipline policy that included prior write ups for the same offense.

32. However, the tardiness that occurred in May of 2017 would not have been a terminable offense according to NorDx's progressive discipline policy if the company had not falsely and pretextually written Plaintiff up twice in March of 2017, in retaliation for her opposing a practice made unlawful by the FLSA.

33. The purported "on call" time that NorDx required Ms. Baril to work before and after her regular shift Monday through Friday, as well as on Saturday mornings, was so restrictive, and the calls were so frequent, that Ms. Baril was not able to effectively use the on-call time for personal purposes.

34. Within the meaning of the Federal FLSA regulations, rather than waiting to be engaged to work for her employer, Ms. Baril was engaged to wait on working days beginning at 3:30 am and sometime continuing past 4:00 am. When her regular shift ended at 1:30 pm, Ms. Baril again was engaged to wait to take calls for NorDx and attend to scheduling matters; the same was true on Saturday mornings. Ms. Baril was engaged to wait because she performed the same job duties for NorDx during each of these pre- and post-shift hours, which were part of her scheduling role as a group lead.

35. Under the Federal FLSA regulations pertaining to the payment of on-call time versus overtime pay, NorDx failed to pay Ms. Baril at least 7 hours of overtime each week, for roughly 50 weeks per year, over a period of 4 years. At a regular rate of $19.37/hour, Ms. Baril's overtime claim roughly amounts to (19.37 x 1.5 = 29.05/hour) x 7 hours x 50 weeks x 4 years = $40,670.00, plus an equal amount as liquidated damages.

36. Alternatively, even if Ms. Baril should only be compensated for the time when she actually took calls for NorDx during the 4 years between May 31, 2013 and the date of her termination on May 31, 2017, a conservative estimate of the time she spent taking calls would be at least 3 hours per week. This unpaid overtime would roughly amount to (19.37 x 1.5 = 29.05/hour) x 3 hours x 50 weeks x 4 years = $17,430.00, plus an equal amount as liquidated damages.

37. Ms. Baril's overtime claim is likely even higher than the numbers set forth above, because she sometimes worked or took calls and attended to scheduling matters during her lunch break.

38. In addition to NorDx's failure to pay Ms. Baril overtime as set forth above, NorDx failed to pay Ms. Baril minimum wages and all wages earned for hours worked outside of her regular shift and on Saturday mornings when she was required to take calls and handle scheduling and/or reassignment of phlebotomy staff for NorDx.

39. To the extent that NorDx paid Ms. Baril a purported "on call" wage in the amount of $2.25 per hour while she was taking calls for the company, this amount violated the Federal minimum wage of $7.25 per hour, and the Maine minimum wage amount of $7.50 per hour through January 1, 2017, and $9.00 per hour from January 1, 2017 to May 31, 2017.

40. To the extent that NorDx did not pay Ms. Baril any wages for time taking calls and scheduling/reassigning staff outside of her regular 40-hour schedule, NorDx violated the Maine Timely and Full Payment of Wages Law, entitling Ms. Baril to her unpaid wages plus two times that amount as liquidated damages.

41. After NorDx terminated Ms. Baril in retaliation for exercises her rights under Section 215(a)(3) of the FLSA, she was out of work for approximately 5 weeks. At a wage of

$19.37 per hour, times 40 hours per week, for 5 weeks, this back pay amount equals $3,874.00, exclusive of any lost benefits or overtime.

42. NorDx engaged in the above-described violations of Federal and State law willfully and knowingly.

## COUNT I – UNPAID OVERTIME UNDER THE FLSA
### (29 U.S.C. § 207)

43. Plaintiff repeats the allegations contained in Paragraphs 1 through 42 as if fully stated herein.

44. NorDx employed Plaintiff, and knowingly or willfully failed to pay her overtime wages, within three years of filing this Complaint.

45. NorDx is a covered employer under the FLSA and an industry engaged in interstate commerce within the meaning of the FLSA, with an annual sales volume that exceeds $500,000.00.

46. For all of the reasons stated above, NorDx failed to pay Ms. Baril 1.5 times her regular rate of pay (time and a half) for all hours worked over 40 in one workweek.

47. NorDx furthermore failed to keep accurate payroll records indicating the true number of hours Ms. Baril worked each week.

48. As a result of NorDx's failure to pay overtime wages due, Ms. Baril is entitled to unpaid overtime as well as an additional amount as liquidated damage, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Kelly Baril requests that the Court award her damages in the form of unpaid overtime, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT II – UNPAID OVERTIME UNDER MAINE'S MINIMUM WAGE LAW
### (26 M.R.S. § 664)

49.     Plaintiff repeats the allegations contained in Paragraphs 1 through 48 as if fully stated herein.

50.     For all of the reasons set forth in Count I above, NorDx has violated the Maine Minimum Wage Law and Plaintiff is entitled to unpaid overtime dating back to May 31, 2013, as well as an additional amount as liquidated damages, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Kelly Baril requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid overtime, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT III – UNPAID MINIMUM WAGES UNDER THE FLSA
### (29 U.S.C. § 206)

51.     Plaintiff repeats the allegations contained in Paragraphs 1 through 50 as if fully stated herein.

52.     For all of the reasons stated above, NorDx willfully failed to pay Ms. Baril minimum wages under the FLSA for all hours worked within three years of filing this Complaint.

53.     As a result of NorDx's failure to pay minimum wages due, Ms. Baril is entitled to unpaid wages as well as an additional amount as liquidated damage, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Kelly Baril requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid minimum wages, liquidated

damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT IV – UNPAID MINIMUM WAGES UNDER MAINE'S MINIMUM WAGE LAW
### (26 M.R.S. § 664)

54. Plaintiff repeats the allegations contained in Paragraphs 1 through 53 as if fully stated herein.

55. For all of the reasons set forth in Count III above, NorDx has violated the Maine Minimum Wage Law and Plaintiff is entitled to unpaid minimum wages dating back to May 31, 2013, as well as an additional amount as liquidated damages, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Kelly Baril requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid overtime, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT V – RETALIATION UNDER THE FLSA
### (29 U.S.C. § 215(a))

56. Plaintiff repeats the allegations contained in Paragraphs 1 through 55 as if fully stated herein.

57. Plaintiff repeatedly engaged in protected activity under Section 215(a)(3) of the FLSA by opposing a practice made unlawful by the FLSA, which was sufficiently definite to put NorDx on notice of Plaintiff's claim to unpaid wages, overtime, and/or minimum wages.

58. Shortly after Ms. Baril's final complaint about practices made unlawful by the FLSA, NorDx discharged, discriminated, and/or took adverse action against her.

59. As a direct and proximate result of Plaintiff lodging a complaint with NorDx, and conducting a meeting with her superiors to discuss unfair wage practices, NorDx took adverse employment action against her.

60. NorDx's stated reason for Ms. Baril's termination was pretextual because the motivating reason behind the decision to terminate Plaintiff was the exercise of her rights under the FLSA.

61. As a result of NorDx's retaliation against Ms. Baril in violation of the FLSA, she is entitled to unpaid wages/back pay, reinstatement, liquidated damages, plus costs of suit and attorney's fees.

WHEREFORE, Plaintiff Kelly Baril requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid wages and back pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT VI – VIOLATION OF THE MAINE TIMELY AND FULL PAYMENT OF WAGES LAW ("TFPWL")
(**26 M.R.S. § 621-A** *et seq.*)

62. Plaintiff repeats the allegations contained in Paragraphs 1 through 61 as if fully stated herein.

63. NorDx failed to pay Plaintiff wages owed for work she performed before and after her regular shift ended within the time provided for under Maine's Timely and Full Payment of Wages Law ("TFPWL").

64. NorDx further failed to pay Ms. Baril all wages owed to her within a reasonable time after cessation of her employment under 26 M.R.S. § 626.

65.     Under the penalty provisions of the TFPWL, Ms. Baril is entitled to an amount equal to twice the amount of her unpaid wages, plus reasonable attorney's fees, interest, and costs of suit.

WHEREFORE, Plaintiff Kelly Baril requests that the Court enter judgment in her favor and against Defendant and award her damages in the form of unpaid wages, liquidated damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT VII – QUANTUM MERUIT

66.     Plaintiff repeats the allegations contained in Paragraphs 1 through 65 as if fully stated herein.

67.     Plaintiff rendered services to Defendant in furtherance of NorDx's business interests at the request and/or with the knowledge of NorDx.

68.     The circumstances surrounding Plaintiff's rendering of services to Defendant made it reasonable for Plaintiff to believe, and in fact Plaintiff did believe, that she would receive payment from NorDx for those services.

69.     Under the circumstances described above, a promise to pay must be inferred.

70.     All of the various services rendered by Plaintiff occurred under circumstances consistent with contractual relations.

71.     Under Maine law, damages owed to Plaintiff for quantum meruit have the same status as unpaid wages, entitling Plaintiff to payment of twice that amount for liquidated damages.

WHEREFORE, Plaintiff Kelly Baril requests that the Court award her damages for quantum meruit, liquidated damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT VIII – UNJUST ENRICHMENT

72. Plaintiff repeats the allegations contained in Paragraphs 1 through 71 as if fully stated herein.

73. Plaintiff conferred a benefit on NorDx by performing services in furtherance of NorDx's business interests.

74. Plaintiff rendered the aforementioned services with the appreciation or knowledge of Defendant of the benefit(s) conferred.

75. Under the circumstances described above, acceptance or retention of the benefit(s) conferred to NorDx, without payment to Plaintiff for the value of services rendered, would be inequitable.

WHEREFORE, Plaintiff Kelly Baril requests that the Court award her damages for Defendant's unjust enrichment, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to her by law.

### JURY TRIAL DEMAND

Plaintiff Kelly Baril hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated: May 31, 2019 */s/ Laura H. White*

_____
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
BERGEN & PARKINSON, LLC
62 Portland Rd., Suite 25
Kennebunk, ME 04043
(207) 985-7000
*lwhite@bergenparkinson.com*

*/s/ Danielle M. Quinlan*

_____
Danielle M. Quinlan, Bar No. 5480
*Attorney for Plaintiff*
BERGEN & PARKINSON, LLC
62 Portland Rd., Suite 25
Kennebunk, ME 04043
(207) 985-7000
*dquinlan@bergenparkinson.com*

14